TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA Collective*
*and potential Rule 23 Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel: (718) 762-1324

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

JIAN YING LIN, HUI QIU CHEN, and XIN HE,
*on behalf of themselves and others similarly situated*,

                      Plaintiffs,

-against-

SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai,
EAST BROTHER CORP. d/b/a Joe's Shanghai,
SHANGHAI CITY CORP d/b/a Joe's Shanghai,
SHANGHAI DUPLICATE CORP d/b/a Joe's
Shanghai, KIU SANG SI a/k/a Joseph Si, YIU FAI
FONG, TUN YEE LAM a/k/a Peter Lam, GUI BING
SHI, SOLOMON C LIOU, MIMI SI, WILLIAM KO,
LILLIAN LIOU, CHENG KUENG LIU, YUN CAI,
and JOHN ZHANG

                      Defendants.

-----------------------------------------------------------------x

**Case No. 18-cv-00886**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

      Plaintiffs JIAN YING LIN, HUI QIU CHEN, and XIN HE (hereinafter referred to as

"Plaintiffs"), on behalf of themselves and other similarly situated, by and through their attorney,

Troy Law, PLLC, hereby bring this complaint against Defendants SHANGHAI ORIGINAL,

INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY

CORP d/b/a Joe's Shanghai, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai, KIU

SANG SI a/k/a Joseph Si, YIU FAI FONG, TUN YEE LAM a/k/a Peter Lam, GUI BING SHI,

SOLOMON C LIOU, MIMI SI, WILLIAM KO, LILLIAN LIOU, CHENG KUENG LIU, YUN

CAI, and JOHN ZHANG, (hereinafter referred to as "Defendants").

## INTRODUCTION

1.      This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

3.      Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:  (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) unpaid "spread of hours" premium, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (5) up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

4.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

5.     This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

**PLAINTIFFS**

7.     Plaintiff JIAN YING LIN was employed by Defendants as a sorter and miscellaneous worker at Joe's Shanghai Chinatown located at 9 Pell Street, New York, NY 10013, and at Joe's Shanghai Midtown located at 24 W 56th Street, New York, NY 10019.

8.     Plaintiff HUI QIU CHEN was employed by Defendants as a kitchen worker, kitchen packer and sorter at Joe's Shanghai Chinatown located at 9 Pell Street, New York, NY 10013, and at Joe's Shanghai Midtown located at 24 W 56th Street, New York, NY 10019.

9.     Plaintiff XIN HE was employed by Defendants as a miscellaneous kitchen worker at Joe's Shanghai Flushing located at 136-21 37th Avenue, Flushing, NY 11354, at Joe's Shanghai Chinatown located at 9 Pell Street, New York, NY 10013, and at Joe's Shanghai Midtown located at 24 W 56th Street, New York, NY 10019.

**CORPORATE DEFENDANTS**

10.     Defendant SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 136-21 37th Avenue, Flushing, NY 11354.

11.     Upon information and belief, SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

12.     Upon information and belief SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai purchased and handled goods moved in interstate commerce.

13.     Defendant EAST BROTHER CORP. d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 136-21 37th Avenue, Flushing, NY 11354.

14.     Upon information and belief, EAST BROTHER CORP. d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

15.     Upon information and belief EAST BROTHER CORP. d/b/a Joe's Shanghai purchased and handled goods moved in interstate commerce.

16.     Defendant SHANGHAI CITY CORP d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 24 W 56th Street, New York, NY 10019.

17.     Upon information and belief, SHANGHAI CITY CORP d/b/a Joe's Shanghai is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18.     Upon information and belief SHANGHAI CITY CORP d/b/a Joe's Shanghai purchased and handled goods moved in interstate commerce.

19.     Defendant SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai is a domestic business corporation organized under the laws of the State of New York with a principal address at 9 Pell

Street, New York, NY 10013.

20.     Upon information and belief, SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai is a

business engaged in interstate commerce that has gross sales in excess of Five Hundred

Thousand Dollars ($500,000) per year.

21.     Upon information and belief SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai

purchased and handled goods moved in interstate commerce.

**OWNER/OPERATOR DEFENDANTS**

22.     The Individual Defendants are officers, directors, managers and/or majority shareholders

or owners of the Corporate Defendants SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai;

EAST BROTHER CORP. d/b/a Joe's Shanghai; ALWAYS GOOD BROTHERS, INC. d/b/a

Joe's Shanghai; SHANGHAI CITY CORP d/b/a Joe's Shanghai; and SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai; and being among the ten largest shareholders, are individually

responsible for unpaid wages under the New York Business Corporation Law.

23.     Owner/Operator Defendant KIU SANG SI a/k/a Joseph Si had the power to (1) hire and

fire employees, (2) supervise and control employee work schedules or conditions of

employment, (3) determine the rate and method of payment, and (4) maintain employee records

at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's

Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai.

24.     Owner/Operator Defendant KIU SANG SI a/k/a Joseph Si is the founder of the Joe's

Shanghai group of restaurants, a 50% shareholder in SHANGHAI DUPLICATE CORP d/b/a

Joe's Shanghai, a 50% shareholder in SHANGHAI CITY CORP d/b/a Joe's Shanghai, the Chief

Executive Officer of SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, an officer and

director of SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai and SHANGHAI CITY

CORP d/b/a Joe's Shanghai, the person to whom the New York Department of State will mail process served on SHANGHAI CITY CORP d/b/a Joe's Shanghai, the New York Division of Alcoholic Beverage Control Principal for SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai, and the head chef at Joe's Shanghai Flushing.

25.    Owner/Operator Defendant KIU SANG SI a/k/a Joseph Si acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

26.    Owner/Operator Defendant YIU FAI FONG had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

27.    Owner/Operator Defendant YIU FAI FONG is a 33.33% shareholder in SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, a 33.33% shareholder in EAST BROTHER CORP. d/b/a Joe's Shanghai, an officer and director of SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai and EAST BROTHER CORP. d/b/a Joe's Shanghai, the New York Division of Alcoholic Beverage Control Principal for EAST BROTHER CORP. d/b/a Joe's Shanghai, and the dining room manager at Joe's Shanghai Flushing.

28.     Owner/Operator Defendant YIU FAI FONG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

29.     Owner/Operator Defendant TUN YEE LAM a/k/a Peter Lam had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

30.     Owner/Operator Defendant TUN YEE LAM a/k/a Peter Lam is a 66.67% shareholder in SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, a 66.67% shareholder in EAST BROTHER CORP. d/b/a Joe's Shanghai, the Chief Executive Officer of SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai, and an officer and director of SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai and EAST BROTHER CORP. d/b/a Joe's Shanghai.

31.     Owner/Operator Defendant TUN YEE LAM a/k/a Peter Lam acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

32.     Owner/Operator Defendant GUI BING SHI had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

33.     Owner/Operator Defendant GUI BING SHI is the kitchen manager at Joe's Shanghai Flushing.

34.     Owner/Operator Defendant GUI BING SHI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

35.     Owner/Operator Defendant SOLOMON C LIOU had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

36.     Owner/Operator Defendant SOLOMON C LIOU is a 50% shareholder in SHANGHAI CITY CORP d/b/a Joe's Shanghai, an officer and director of SHANGHAI CITY CORP d/b/a Joe's Shanghai, and the New York Division of Alcoholic Beverage Control Principal for SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

37.    Owner/Operator Defendant SOLOMON C LIOU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

38.    Owner/Operator Defendant MIMI SI had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

39.    Owner/Operator Defendant MIMI SI is the New York Division of Alcoholic Beverage Control Principal for SHANGHAI CITY CORP d/b/a Joe's Shanghai.

40.    Owner/Operator Defendant MIMI SI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

41.    Owner/Operator Defendant WILLIAM KO had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY

CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

42.     Owner/Operator Defendant WILLIAM KO is the kitchen and dining room manager at Joe's Shanghai Midtown.

43.     Owner/Operator Defendant WILLIAM KO acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

44.     Owner/Operator Defendant LILLIAN LIOU had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

45.     Owner/Operator Defendant LILLIAN LIOU is a 25% shareholder in SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai and an officer and director of SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

46.     Owner/Operator Defendant LILLIAN LIOU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai.

47.     Owner/Operator Defendant CHENG KUENG LIU had the power to (1) hire and fire

employees, (2) supervise and control employee work schedules or conditions of employment, (3)

determine the rate and method of payment, and (4) maintain employee records at SHANGHAI

ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai,

SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a

Joe's Shanghai.

48.     Owner/Operator Defendant CHENG KUENG LIU is a 25% shareholder in SHANGHAI

DUPLICATE CORP d/b/a Joe's Shanghai and an officer and director of SHANGHAI

DUPLICATE CORP d/b/a Joe's Shanghai.

49.     Owner/Operator Defendant CHENG KUENG LIU acted intentionally and maliciously

and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder,

29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable

with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's

Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE

CORP d/b/a Joe's Shanghai.

50.     Owner/Operator Defendant YUN CAI had the power to (1) hire and fire employees, (2)

supervise and control employee work schedules or conditions of employment, (3) determine the

rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL,

INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY

CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

51.     Owner/Operator Defendant YUN CAI is the kitchen manager at Joe's Shanghai

Chinatown.

52.     Owner/Operator Defendant YUN CAI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

53.     Owner/Operator Defendant JOHN ZHANG had the power to (1) hire and fire employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employee records at SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

54.     Owner/Operator Defendant JOHN ZHANG is the dining room manager at Joe's Shanghai Chinatown.

55.     Owner/Operator Defendant JOHN ZHANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai, EAST BROTHER CORP. d/b/a Joe's Shanghai, SHANGHAI CITY CORP d/b/a Joe's Shanghai, and SHANGHAI DUPLICATE CORP d/b/a Joe's Shanghai.

56.     Plaintiffs have fulfilled all conditions precedent, or such conditions have been waived.

## **FACTS**

**DEFENDANTS COMMITTED THE FOLLOWING ALLEGED ACTS KNOWINGLY, INTENTIONALLY AND WILLFULLY AGAINST THE PLAINTIFFS, THE FLSA COLLECTIVE PLAINTIFFS, AND THE CLASS**

57.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and

similarly situated employees at least the hourly minimum wage rate for each hour worked.

58.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully due overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

59.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

60.    Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

61.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice in English and in Chinese (Plaintiffs' primary language) reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day as required by NYLL §195(1).

62.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

63.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

64.    Defendants willfully and intentionally committed widespread violations of the FLSA and NYLL.

**CORPORATE DEFENDANTS FORM A SINGLE ENTERPRISE**

65.    At all times relevant herein, corporate defendants, all of which do business as Joe's Shanghai, were and continue to be, a single and joint employer with a high degree of interrelated

and unified operation, centralized control of labor relations, common ownership, common control, common management, common website, common business purposes and interrelated business goals.

66.     Joe's Shanghai shares a single website, at http://www.joeshanghairestaurants.com/, which not only lists the three restaurants, their locations, and their menus, but in its "FORMAL DECLARATION" on its home page says that "Our company so far ONLY has three branches in New York:

"First Branch is located in Flushing (136-21 37th Avenue, Flushing, NY 11354)

"Second Branch is located in Chinatown (9 Pell Street, New York, NY 10013)

"Third Branch is located at Midtown (24 W. 56th Street, New York, NY 10019)."

(See Exhibit 08).

67.     Furthermore, Joe's Shanghai is owned and controlled by the same Owner/Operator Defendants, including KIU SANG SI a/k/a Joe Si, who opened each of the three Joe Shanghai locations of the Joe Shanghai "Company" (See Exhibit 09), YIU FAI FONG, TUN YEE LAM a/k/a Peter Lam, SOLOMON C LIOU, LILLIAN LIOU, and CHENG KUENG LIU, all of whom are owners, officers, and directors of more than one "Joe's Shanghai" corporation.

68.     Joe's Shanghai transferred employees, including Plaintiffs, between locations.

**PLAINTIFF JIAN YING LIN**

69.     From on or about August 1, 2008 to August 1, 2011, and then from on or about January 1, 2012 to July 31, 2015, Plaintiff JIAN YING LIN was employed by Defendants to work as a sorter and miscellaneous worker.

70.     From on or about August 1, 2008 to August 1, 2011, Plaintiff JIAN YING LIN worked at Joe's Shanghai's Chinatown location, 9 Pell Street, New York, NY 10013.

71.     From on or about January 1, 2012 to July 31, 2014, Plaintiff JIAN YING LIN worked at

Joe's Shanghai's Chinatown location, 9 Pell Street, New York, NY 10013.

72.    From on or about August 1, 2014 to December 31, 2014, Plaintiff JIAN YING LIN worked at Joe's Shanghai's Midtown location, 24 W 56th Street, New York, NY 10019.

73.    From on or about January 1, 2015 to July 31, 2015, Plaintiff JIAN YING LIN worked at Joe's Shanghai's Chinatown location, 9 Pell Street, New York, NY 10013.

74.    From on or about August 1, 2008 to August 1, 2011, Plaintiff JIAN YING LIN's regular work schedule ran from 10:00 to 21:00, for eleven (11) hours, Fridays through Wednesdays, with Thursdays off.

75.    From on or about January 1, 2012 to July 31, 2014, Plaintiff JIAN YING LIN's regular work schedule ran from 10:00 to 21:00, for eleven (11) hours, Fridays through Wednesdays, with Thursdays off.

76.    From on or about August 1, 2014 to December 31, 2014, Plaintiff JIAN YING LIN's regular work schedule ran from 10:00 to 21:00, for eleven (11) hours, Fridays through Wednesdays, with Thursdays off.

77.    From on or about January 1, 2015 to July 31, 2015, Plaintiff JIAN YING LIN's regular work schedule ran:

     a.    From 10:00 to 21:00, for eleven (11) hours, five (5) days per week; and

     b.    From 17:00 to 22:00, for five (5) hours per day, for one (1) day out of the week, with one (1) day off.

78.    Throughout her employment, Plaintiff JIAN YING LIN was afforded two (2) ten-to-fifteen-minute (10-to-15-minute) meal breaks during the working day.

79.    From on or about August 1, 2008 to August 1, 2011, Plaintiff JIAN YING LIN was not afforded a rest break during the working day.

80.     After on or about January 1, 2012, Plaintiff JIAN YING LIN was afforded one (1) rest break during the day.

81.     From on or about August 1, 2008 to August 1, 2011, Plaintiff JIAN YING LIN worked about sixty- six (66) hours per week.

82.     From on or about January 1, 2012 to July 31, 2014, Plaintiff JIAN YING LIN worked about sixty (60) hours per week.

83.     From on or about August 1, 2014 to December 31, 2014, Plaintiff JIAN YING LIN worked about sixty (60) hours per week.

84.     From on or about January 1, 2015 to July 31, 2015, Plaintiff JIAN YING LIN worked about fifty-four (54) hours per week.

85.     From on or about August 1, 2008 to August 1, 2011, Plaintiff JIAN YING LIN was paid a salary of one thousand six hundred dollars ($1,600.00) per month, in semimonthly installments of eight hundred dollars ($800.00) paid on the fifteenth and last day of each month, in cash.

86.     From on or about January 1, 2012 to July 31, 2014, Plaintiff JIAN YING LIN was paid a salary of one thousand eight hundred dollars ($1,800.00) per month, in semimonthly installments of nine hundred dollars ($900.00) paid on the fifteenth and last day of each month, in cash.

87.     From on or about August 1, 2014 to July 31, 2015, Plaintiff JIAN YING LIN was paid a salary of five hundred sixteen dollars ($516.00) per week, paid every other Monday, by a combination of cash and check.

88.     From on or about August 1, 2014 to July 31, 2015, taxes were withheld only against the portion of Plaintiff JIAN YING LIN's pay that was paid by check.

89.     From on or about February 19, 2010 to June 5, 2010, Defendants failed to pay Plaintiff JIAN YING LIN her lawful overtime of one and one half times (1.5x) her regular hourly rate for

all hours worked above forty (40) in a given workweek.

90.     While employed by Defendants, Plaintiff JIAN YING LIN was not exempt under federal and state laws requiring employers to pay employees overtime.

**PLAINTIFF HUI QIU CHEN**

91.     From on or about February 19, 2010 to June 20, 2016, Plaintiff HUI QIU CHEN was employed by Defendants to work as a miscellaneous kitchen worker, kitchen packer and sorter.

92.     From on or about February 19, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN worked at Joe's Shanghai's Chinatown location, 9 Pell Street, New York, NY 10013.

93.     From on or about October 11, 2012 to June 20, 2016, Plaintiff HUI QIU CHEN worked at Joe's Shanghai's Midtown location, 24 W 56th Street, New York, NY 10019.

94.     From on or about February 19, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN's work schedule ran:

      a.      From 10:00 to 21:00, for eleven (11) hours, on four weekdays, with one non-fixed weekday off; and

      b.      From 11:00 to 22:00, for eleven (11) hours, on Saturdays and Sundays.

95.     From on or about February 19, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN worked about sixty-six (66) hours per week.

96.     From on or about February 19, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN was afforded two (2) fifteen-minute (15-minute) meal breaks per working day.

97.     From on or about February 19, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN was paid a salary of one thousand eight hundred dollars ($1,800.00) per month for those months she worked as a miscellaneous kitchen worker and two thousand two hundred dollars ($2,200.00) per month for those months she worked as a sorter.

98.     From on or about February 19, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN was

paid by a combination of check and cash.

99.    From on or about February 19, 2010 to June 5, 2010, Plaintiff HUI QIU CHEN was not given wage statements with her pay, and taxes were not withheld from her pay.

100.    From on or about June 6, 2010 to January 1, 2011, Plaintiff HUI QIU CHEN was paid three hundred twenty dollars ($320.00) per week by check, and the remainder of her monthly salary in cash.

101.    From on or about January 2, 2011 to October 10, 2012, Plaintiff HUI QIU CHEN was paid two hundred twenty-seven dollars and forty-six cents ($227.46) per week by check, and the remainder of her monthly salary in cash.

102.    From on or about June 6, 2010 to October 10, 2012, taxes were withheld only against the portion of Plaintiff HUI QIU CHEN's pay that was paid by check.

103.    From on or about June 6, 2010 to October 10, 2012, Plaintiff HUI QIU CHEN received wage statements that drastically underreported her hours worked per week.

104.    From on or about June 6, 2010 to January 1, 2011, Plaintiff HUI QIU CHEN's wage statements reported that she worked forty (40) hours per week.

105.    From on or about January 2, 2011 to October 10, 2012, Plaintiff HUI QIU CHEN's wage statements reported that she worked twenty-five (25) hours per week.

106.    From on or about February 19, 2010 to June 5, 2010, Defendants failed to pay Plaintiff HUI QIU CHEN her lawful overtime of one and one half times (1.5x) her regular hourly rate for all hours worked above forty (40) in a given workweek.

107.    While employed by Defendants, Plaintiff HUI QIU CHEN was not exempt under federal and state laws requiring employers to pay employees overtime.

108.    From on or about June 6, 2010 to October 10, 2012, Defendants claimed a twelve dollar

and sixty cent ($12.60) meal credit against Plaintiff HUI QIU CHEN's wages every week.

109.    From on or about October 11, 2012 to June 20, 2016, Plaintiff HUI QIU CHEN's work schedule ran:

      a.    From 11:30 to 22:00, with one (1) one and one-half-hour (1.5-hour) rest break during the day, for nine (9) hours per day, five days out of the week;

      b.    From 17:00 to 22:00, with one (1) one-hour (1-hour) rest break during the day, for four (4) hours per day, for one (1) day out of the week.

110.    Which five days Plaintiff HUI QIU CHEN worked nine (9) hours and which day Plaintiff HUI QIU CHEN worked four (4) hours changed from week to week, but she always worked five nine-hour (9-hour) days and one four-hour (4-hour) day each week.

111.    From on or about October 11, 2012 to June 20, 2016, Plaintiff HUI QIU CHEN worked forty-nine (49) hours per week.

112.    From on or about October 11, 2012 to June 20, 2016, Plaintiff HUI QIU CHEN was paid a salary of two thousand one hundred dollars ($2,100.00) per month.

113.    From on or about October 11, 2012 to June 20, 2016, Plaintiff HUI QIU CHEN was paid by a combination of check and cash.

114.    From on or about October 11, 2012 to September 28, 2013, Plaintiff HUI QIU CHEN was paid two hundred seventeen dollars and fifty cents ($217.50) per week by check, and the remainder of her monthly salary in cash.

115.    From on or about September 29, 2013 to December 28, 2013, Plaintiff HUI QIU CHEN was paid two hundred ninety dollars ($290.00) per week by check, and the remainder of her monthly salary in cash.

116.    From on or about December 29, 2013 to December 27, 2014, Plaintiff HUI QIU CHEN

was paid three hundred twenty dollars ($320.00) per week by check, and the remainder of her monthly salary in cash.

117.    From on or about December 28, 2014 to December 26, 2015, Plaintiff HUI QIU CHEN was paid three hundred fifty dollars ($350.00) per week by check, and the remainder of her monthly salary in cash.

118.    From on or about December 27, 2015 to June 20, 2016, Plaintiff HUI QIU CHEN was paid two hundred twenty-five dollars ($225.00) per week by check, and the remainder of her monthly salary in cash.

119.    From on or about October 11, 2012 to June 20, 2016, Plaintiff HUI QIU CHEN received wage statements that drastically underreported her hours worked per week.

120.    From on or about October 11, 2012 to September 28, 2013, Plaintiff HUI QIU CHEN's wage statements reported that she worked thirty (30) hours per week.

121.    From on or about September 29, 2013 to December 26, 2015, Plaintiff HUI QIU CHEN's wage statements reported that she worked forty (40) hours per week.

122.    From on or about December 27, 2015 to June 20, 2016, Plaintiff HUI QIU CHEN's wage statements reported that she worked twenty-five (25) hours per week.

123.    From on or about October 11, 2012 to June 20, 2016, Defendants failed to pay Plaintiff HUI QIU CHEN her lawful overtime of one and one half times (1.5x) her regular hourly rate for all hours worked above forty (40) in a given workweek.

124.    While employed by Defendants, Plaintiff HUI QIU CHEN was not exempt under federal and state laws requiring employers to pay employees overtime.

125.    From on or about October 11, 2012 to June 20, 2016, Defendants claimed a twenty-one dollar ($21.00) meal credit against Plaintiff HUI QIU CHEN's wages every week.

**PLAINTIFF XIN HE**

126. From on or about December 1, 2008 to July 31, 2016, Plaintiff XIN HE was employed by Defendants to work as a chef.

127. From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE worked at Joe's Shanghai's Flushing location, at 136-21 37th Avenue, Flushing, NY 11354.

128. From on or about October 1, 2013 to June 30, 2015, Plaintiff XIN HE worked at Joe's Shanghai's Chinatown location, at 9 Pell Street, New York, NY 10013.

129. From on or about July 1, 2015 to April 30, 2016, Plaintiff XIN HE worked at Joe's Shanghai's Flushing location, at 136-21 37th Avenue, Flushing, NY 11354.

130. From on or about May 1, 2016 to July 31, 2016, Plaintiff XIN HE worked at Joe's Shanghai's Midtown location, at 24 W 56th Street, New York, NY 10019.

131. From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE's work schedule ran from 10:00-21:30, for eleven and one half (11.5) hours per day, Thursdays through Tuesdays.

132. From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE was afforded no fixed rest break during the day.

133. From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE worked sixty-nine (69) hours per day.

134. From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE was afforded two (2) meal breaks during the day: one from 15:00 to 15:30, and one that was not fixed in time.

135. From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE was paid a salary of two thousand four hundred dollars ($2,400.00) per month, with one hundred sixty dollars ($160.00) paid by check every week, and the remainder of his salary in cash.

136. From on or about December 1, 2008 to October 31, 2011, taxes were withheld only

against the portion of Plaintiff XIN HE's pay that was paid by check.

137.    From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE received wage statements that drastically underreported his hours worked per week.

138.    From on or about December 1, 2008 to October 31, 2011, Plaintiff XIN HE's wage statements reported that he worked twenty (20) hours per week.

139.    From on or about December 1, 2008 to October 31, 2011, Defendants failed to pay Plaintiff XIN HE his lawful overtime of one and one half times (1.5x) his regular hourly rate for all hours worked above forty (40) in a given workweek.

140.    While employed by Defendants, Plaintiff XIN HE was not exempt under federal and state laws requiring employers to pay employees overtime.

141.    From on or about December 1, 2008 to October 31, 2011, Defendants claimed a meal credit of fifteen dollars ($15.00) per week against Plaintiff XIN HE's wages.

142.    From on or about October 1, 2013 to June 30, 2015, Plaintiff XIN HE's work schedule ran:

    a.    From 10:00-21:30, for eleven and one half (11.5) hours per day, Fridays through Tuesdays, with one (1) half-hour rest break at either 12:00, 17:00, or 19:00, taking turns with the other chefs; and

    b.    From 17:00 to 23:00, for six (6) hours per day on Thursdays.

143.    From on or about October 1, 2013 to June 30, 2015, Plaintiff XIN HE worked sixty-one (61) hours per week.

144.    From on or about October 1, 2013 to June 30, 2015, at Joe's Shanghai's Chinatown location, at 9 Pell Street, New York, NY 10013, Plaintiff XIN HE was required to punch in at the beginning of each workday, and to punch out at the end of each workday. Plaintiff XIN HE's

pay, however, bore no relationship to the number of hours he worked.

145.    From on or about October 1, 2013 to June 30, 2015, Plaintiff XIN HE was afforded two half-hour meal breaks during the day, at either 12:00 and 17:00, 12:00 and 19:00, or 17:00 and 19:00, depending on which rest break it was his turn to take.

146.    From on or about October 1, 2013 to June 30, 2015, Plaintiff XIN HE was paid a salary of three thousand dollars ($3,000.00) per month, all in cash, paid in semimonthly installments every other Monday.

147.    From on or about October 1, 2013 to June 30, 2015, taxes were not withheld against Plaintiff XIN HE's pay.

148.    From on or about October 1, 2013 to June 30, 2015, Plaintiff XIN HE did not receive wage statements with his pay.

149.    From on or about October 1, 2013 to June 30, 2015, Defendants failed to pay Plaintiff XIN HE his lawful overtime of one and one half times (1.5x) his regular hourly rate for all hours worked above forty (40) in a given workweek.

150.    While employed by Defendants, Plaintiff XIN HE was not exempt under federal and state laws requiring employers to pay employees overtime.

151.    From on or about July 1, 2015 to April 30, 2016, Plaintiff XIN HE's work schedule ran:

    a.    From 10:00-21:30, for eleven and one half (11.5) hours per day, Fridays through Tuesdays; and

    b.    From 17:00 to 23:45, for six and three quarters (6.75) hours per day on Thursdays.

152.    From on or about July 1, 2015 to April 30, 2016, Plaintiff XIN HE worked sixty-four and one quarter (64.25) hours per week.

153.    From on or about July 1, 2015 to April 30, 2016, at Joe's Shanghai's Flushing location, at 136-21 37th Avenue, Flushing, NY 11354, Plaintiff XIN HE was required to punch in at the beginning of each workday, and to punch out at the end of each workday. Plaintiff XIN HE's pay, however, bore no relationship to the number of hours he worked.

154.    From on or about July 1, 2015 to April 30, 2016, Plaintiff XIN HE was afforded two half-hour meal breaks during the day. Plaintiff XIN HE was not afforded a fixed rest break.

155.    From on or about July 1, 2015 to September 30, 2015, Plaintiff XIN HE was paid a salary of three thousand dollars ($3,000.00) per month, all in cash, paid in weekly installments of about six hundred ninety dollars ($690.00) every Sunday.

156.    From on or about October 1, 2015 to April 30, 2016, Plaintiff XIN HE was paid a salary of three thousand two hundred dollars ($3,200.00) per month, all in cash, paid in weekly installments of about seven hundred forty dollars ($740.00) every Sunday.

157.    From on or about July 1, 2015 to April 30, 2016, taxes were not withheld against Plaintiff XIN HE's pay.

158.    From on or about July 1, 2015 to April 30, 2016, Plaintiff XIN HE did not receive wage statements with his pay.

159.    From on or about July 1, 2015 to April 30, 2016, Defendants failed to pay Plaintiff XIN HE his lawful overtime of one and one half times (1.5x) his regular hourly rate for all hours worked above forty (40) in a given workweek.

160.    While employed by Defendants, Plaintiff XIN HE was not exempt under federal and state laws requiring employers to pay employees overtime.

161.    From on or about May 1, 2016 to July 31, 2016, Plaintiff XIN HE's work schedule ran:

        a.      From 10:00-21:30, for eleven and one half (11.5) hours per day, Fridays through

Tuesdays; and

    b.      From 17:00 to 23:00, for six (6) hours per day on Thursdays.

162.    In addition to his regularly-scheduled hours, Plaintiff XIN HE was required to work until 23:00 between three (3) and five (5) days per week between Friday and Tuesday.

163.    From on or about May 1, 2016 to July 31, 2016, Plaintiff XIN HE worked sixty-nine and one half (69.5) hours per week.

164.    From on or about May 1, 2016 to July 31, 2016, at Joe's Shanghai's Midtown location, at 24 W 56th Street, New York, NY 10019, Plaintiff XIN HE was required to punch in at the beginning of each workday, and to punch out at the end of each workday. Plaintiff XIN HE's pay, however, bore no relationship to the number of hours he worked.

165.    From on or about May 1, 2016 to July 31, 2016, Plaintiff XIN HE was afforded two half-hour meal breaks during the day. Plaintiff XIN HE was not afforded a fixed rest break.

166.    From on or about May 1, 2016 to June 30, 2016, Plaintiff XIN HE was paid a salary of three thousand four hundred dollars ($3,400.00) per month, all in cash, paid in semimonthly installments of about one thousand seven hundred dollars ($1,700.00).

167.    From on or about July 1, 2016 to July 31, 2016, Plaintiff XIN HE was paid a salary of three thousand six hundred dollars ($3,600.00) per month, all in cash, paid in semimonthly installments of about one thousand eight hundred dollars ($1,800.00).

168.    From on or about May 1, 2016 to July 31, 2016, taxes were not withheld against Plaintiff XIN HE's pay.

169.    From on or about May 1, 2016 to July 31, 2016, Plaintiff XIN HE did not receive wage statements with his pay.

170.    From on or about May 1, 2016 to July 31, 2016, Defendants failed to pay Plaintiff XIN

HE his lawful overtime of one and one half times (1.5x) his regular hourly rate for all hours worked above forty (40) in a given workweek.

171.    While employed by Defendants, Plaintiff XIN HE was not exempt under federal and state laws requiring employers to pay employees overtime.

## COLLECTIVE ACTION ALLEGATIONS

172.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ALLEGATIONS

173.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

174.    All said persons, including Plaintiffs, are referred to herein as the "Class."

**ASCERTAINABILITY**

175.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

**NUMEROSITY**

176.    The proposed class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Thought the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than one hundred forty (140) members of the class.

**COMMONALITY**

177.    Common questions of law and fact exist as to members of the Class which predominate over questions affecting only individual members of the Class, including, but not limited to, the following:

a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.    Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

c.    Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

d.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Class spread-of-hours pay as required by the NYLL;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Class's start of employment and/or or timely thereafter;

g.    Whether Defendants provided paystubs detailing full and accurate rates of pay and credits taken towards the minimum wage to Plaintiffs and the Class on each payday;

and

h.  At what common rate, or rates subject to common method of calculation was and

is Defendants required to pay the Class members for their work.

**TYPICALITY**

178.  Plaintiffs' claims are typical of those claims which could be alleged by any member of

the Class, and the relief sought is typical of the relief which would be sought by each member of

the Class in separate actions. All the Class members were subject to the same corporate practices

of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all

Class members similarly, and Defendants benefitted from the same type of unfair and/or

wrongful acts as to each Class member. Plaintiff and other Class members sustained similar

losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

**ADEQUACY**

179.  Plaintiffs are adequate representatives of the Class, will fairly protect the interest of other

members of the Class, have no interests antagonistic to the members of the Class, and will

vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating

matters of this type. Class counsel are competent and experienced in litigating large employment

law class actions.

**SUPERIORITY**

180.  A class action is superior to other available methods for the fair and efficient adjudication

of the controversy, particularly in the context of wage and hour litigation where individual Class

members lack the financial resources to vigorously prosecute a lawsuit against corporate

defendants. Class action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expenses that numerous individual actions engender.

Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

181.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

182.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

183.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

184.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

185.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT II.
**[Violations of the New York Labor Law— Failure to Pay Minimum Wage**
**Brought on behalf of the Plaintiffs and the Class]**

186.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

187.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of NYLL NYLL §§ 2 and 651.

188.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Class for some or all of the hours they worked.

189.    Defendants knowingly and willfully violated Plaintiff's and similarly-situated Class

Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

190.     After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

## COUNT III.
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

191.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

192.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

193.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

194.     Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

195.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

196.    The FLSA and supporting regulations required employers to notify employees of

employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

197.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements

of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA

Collectives' labor.

198.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime

rate of time and one half for all hours worked in excess of forty (40) per week when they knew

or should have known such was due and that failing to do so would financially injure Plaintiffs

and Collective Action members.

## COUNT IV.
### [Violations of the New York Labor Law— Failure to Pay Overtime Wage
### Brought on behalf of the Plaintiffs and the Class]

199.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

200.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N.

8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any

underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus

interest.

201.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime at

one and one-half times (1.5x) Plaintiff's and the Class Members' regular hourly rate or the

minimum wage, whichever is greater.

202.    Defendants' failure to pay overtime violated the NYLL.

203.    Defendants' failure to pay overtime was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Failure to Pay Spread of Hours
### Brought on behalf of the Plaintiffs and the Class]

204.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

205.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and 12 NYCRR § 146-1.6.

206.    Defendants' failure to pay Plaintiff his spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of the Plaintiffs and the Class]

207.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

208.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

209.    Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiffs and the Class work or worked.

210.    Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

211.    Defendants' failure to provide the meal periods required by NYLL § 162 was not in good

faith.

### COUNT VII.
**[Violation of New York Labor Law— Unlawful Taking of Meal Credit
Brought on behalf of the Plaintiffs and the Class]**

212.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

213.    From July 24, 2009, 12 NYCRR § 137-1.9 required that employers take no more than:

a.    Two meal credits of two dollars and ten cents ($2.10) per day for employees

working five (5) or more hours per day and making four dollars and sixty-five cents

($4.65) or more per hour;

b.    Two meal credits of two dollars and fifty cents ($2.50) per day for employees

working five (5) hours per day and making less than four dollars and sixty-five cents

($4.65) per hour;

c.    One meal credit of two dollars and ten cents ($2.10) per day for employees

working five (5) or more hours per day and making four dollars and sixty-five cents

($4.65) or more per hour; or

d.    One meal credit of two dollars and fifty cents ($2.50) per day for employees

working five (5) hours per day and making less than four dollars and sixty-five cents

($4.65) per hour.

214.    After December 31, 2016, 12 NYCRR § 146-1.9 required that employers of eleven (11)

or more employees located in New York City take no more than two meal credits of two dollars

and eighty-five cents ($2.85) per day for employees working five (5) or more hours per day, and

no more than one (1) meal credit of two dollars and eighty-five cents ($2.85) per day for

employees working less than five (5) hours per day.

215.   Defendants took meal credits to which they were not entitled.

216.   Defendants' taking of meal credits to which they were not entitled was not in good faith.

## COUNT VIII.
**[Violation of New York Labor Law—Failure to Keep Records
Brought on behalf of the Plaintiffs and the Class]**

217.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

218.   Defendants did not maintain, establish and preserve Plaintiff's weekly payroll records for a period of not less than six years, as required by 12 NYCRR § 146-2.1.

219.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

220.   Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

221.   Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

## COUNT IX.
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
Brought on behalf of the Plaintiffs and the Class]**

222.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

223.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of

the employer; any "doing business as" names used by the employer; the physical address of

employer's main office or principal place of business, and a mailing address if different; the

telephone number of the employer. NYLL § 195-1(a).

224.    Defendants intentionally failed to provide notice to employees in violation of NYLL §

195, which requires all employers to provide written notice in the employee's primary language

about the terms and conditions of employment related to rate of pay, regular pay cycle and rate

of overtime on their or her first day of employment.

225.    Defendants not only did not provide notice to each employee at Time of Hire, but failed

to provide notice to Plaintiffs even after the fact.

226.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to

recover from Defendants, jointly and severally, $50 for each workday that the violation occurred

or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New

York Labor Law. NYLL § 198(1-b).

## COUNT X.
### [Violation of New York Labor Law—Failure to Provide Pay Stub
### Brought on behalf of the Plaintiffs and the Class]

227.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

228.    The NYLL and supporting regulations require employers to provide detailed paystub

information to employees every payday. NYLL § 195-1(d).

229.    Defendants have failed to make a good faith effort to comply with the New York Labor

Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after

each Plaintiff's payday.

230.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to

recover from Defendants, jointly and severally, $250 for each workday of the violation, up to

$5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. NYLL §198(1-d).

## COUNT XI.
### [Violations of 26 USC § 7434—Fraudulent Filing of IRS Returns
### Brought on behalf of the Plaintiffs]

231.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

232.    26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

233.    Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XII.
### [Violations of the New York General Business Law—Deceptive Acts and Practices
### Brought on behalf of the Plaintiff]

234.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

235.    NY General Business Law § 349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

236.    Due to Defendants' violations of NYGBS § 349, each Plaintiff is entitled to recover from Defendants, jointly and severally, his or her actual damages or fifty dollars ($50), whichever is greater, or both such actions.

237.    Plaintiff demands the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporations to recover wages owed as employees of the corporations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as

provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)       An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)       An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)       Up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)       Up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)       Reimbursement of reasonable out-of-pocket costs sustained by Plaintiffs and similarly situated drivers in the purchase, maintenance and repair of their motor vehicles as drivers in direct service of Defendant Corporations;

k)       An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall

automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: Flushing, NY
       February 9, 2018

                        TROY LAW, PLLC


                        ____/s/ John Troy_____
                        John Troy
                        41-25 Kissena Boulevard, Suite 119
                        Flushing, NY 11355
                        Tel (718) 762-1324
                        johntroy@troypllc.com
                        *Attorneys for Plaintiffs*